1
2
3
4
5
6
7

FILED LODGED
RECEIVED
JUN 25 2021
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                              DEPUTY

8                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
9

10   NATHEN BARTON,                    Case No.: 3:21-cv-05462-RJB

11                          Plaintiff     ORIGINAL COMPLAINT FOR A
                                          CIVIL CASE AND INJUNCTIVE
12        v.                              RELIEF

13   ASSET REALTY LLC &
     PIPELINEPLATFORM.COM LLC          Jury Trial: ☒ Yes   ☐ No
14

15                          Defendants.

16              I.      THE PARTIES TO THIS COMPLAINT

17   A.    Plaintiff

18         Name                Nathen Barton
           Street Address      4618 NW 11th Cir
19
           City and County     Camas, Clark County
20         State and Zip Code  Washington 98607
           Telephone Number    (718) 710-5784
21   B.    Defendant(s)

22         Defendant No. 1

23         Name                        Asset Realty LLC

24

PLAINTIFF'S ORIGINAL COMPLAINT FOR A CIVIL CASE - 1 / 12       NATHEN BARTON
                                                               4618 NW 11TH CIR
                                                               CAMAS WA 98607

| | | |
|---|---|---|
| Job or Title *(if known)* | | |
| Street Address | 121 Lake Street Suite 201 | |
| City and County | Kirkland, King County | |
| State and Zip Code | WA, 98033-9025 | |
| Telephone Number | (425) 250-3301 | |

Defendant No. 2

| | | |
|---|---|---|
| Name | PipelinePlatform.Com LLC | |
| Job or Title *(if known)* | | |
| Street Address | 121 Lake Street Suite 201 | |
| City and County | Kirkland, King County | |
| State and Zip Code | WA, 98033-9025 | |
| Telephone Number | (425) 269-4087 | |

## II.   BASIS FOR JURISDICTION

Plaintiff Nathen Barton is a natural person and full-time resident of Clark County, Washington.  All the acts alleged in this complaint occurred in Clark County, Washington State, during the year 2021.

Jurisdiction in this court is correct because of where Plaintiff resides, his residence is a nexus where Plaintiff suffered personal injury and invasion of privacy at the hands of the Defendants, and Plaintiff is suing in part under federal statute the Telephone Consumer Protection Act of 1991, known as the TCPA, giving rise to a lawsuit that may be brought in Federal Court pursuant to *Mims v. Arrow Fin. Services, LLC*.

## III.   STATEMENT OF CLAIM

Plaintiff pays for a cell phone with phone number (972) XXX XXXX and uses it as a normal residential telephone subscriber would.  It is a Protected Computer as it is used in a manner that affects interstate or foreign commerce or communication.

PLAINTIFF'S ORIGINAL COMPLAINT FOR A CIVIL CASE - 2 / 12

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

1     This (972) XXX XXXX number was registered on the FTC do-not-call registry more

2 than 31 days before January 14, 2021, and the three calls alleged in this complaint were all made

3 to this 972-area code number.

4     Plaintiff has no established business relationship with Asset Realty LLC ("Asset") nor

5 has ever done business with Asset.  Asset is a real estate company founded by Chad Storey with

6 principal office in Kirkland, Washington.

7     Chad Storey testified in a declaration dated June 17, 2021:

8 "3. Asset dba Century21 Northwest, is the owner of Pipeline Platform (aka "Pipeline"),
which is a software platform and provider of real estate lead management software, real
9 estate referrals, and other real estate related technology solutions."

10 "9. People who are trying to sell their real estate on public websites, like Zillow.com or
Realtor.com, are making their contact information public.  As a real estate company, we
11 contact these sellers to see whether we can schedule a tour of the property because we
have interested buyers."
12

13     Pipeline appears to be PipelinePlatform.Com LLC ("Pipeline") with website

14 *pipelineplatform.com*. Asset and Pipeline are in the business of combing real estate listings for

15 properties being sold by owner, scraping the property owners' contact information, and then

16 Pipeline and/or Asset telephone solicits the owners to sell real estate agent services.

17     Plaintiff knows this firsthand; it has happened to him three times.

18 **Unsolicited telephone call #1**

19     On or about 11:29AM, January 14, 2021, Plaintiff received a phone call from (425) 295-

20 1197.  The call solicited real estate agent services from "Century 21 Northwest Realty".

21     The caller did not identify the company behind the call and the purpose of the call within

22 the first 30 seconds of initiating the call.  In the 3 minute and 39 second call, the caller did not

23 ask for a tour of the property.  However, the caller did solicit real estate sales services for

24 Plaintiff's Vancouver Washington property.

PLAINTIFF'S ORIGINAL COMPLAINT FOR A CIVIL CASE - 3 / 12

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

The following are a few quotes taken from the call, with the numbers at the start of each quote giving the time stamp of what time each statement was made (minute:second).  The Asset/Pipeline agent spent the vast majority of the call marketing Asset real estate sales services:

> 0:26 Plaintiff: "If you are calling to sell us something or be our agent, then we are not interested"
> 1:02 C21 caller: "What's stopping you from selling this property with an agent?"
> 1:45 C21 caller: "If I can show you a way to net you more money than you can net on your own, not only that, also there is a shorter amount of time, well then obviously that makes sense to you, right?
> 3:04 Plaintiff "We would prefer to not be called, and for you to maybe put us on a do not call list"
> 3:12 C21 caller: "Oh, I see sir, alright then, so, um, let me do that for you sir"

Plaintiff asked for no more calls and to be put on a do not call list, and the Asset/Pipeline caller signaled her understanding and acquiescence of Plaintiff's request.  A complete and accurate recording of this call is at *youtube.com/watch?v=I3hOg7tPS2w*

## Unsolicited telephone call #2

On or about 11:29AM, February 3, 2021, Plaintiff received a phone call from (425) 295-1197.  The call solicited real estate agent services from "Century 21 Northwest Realty".  The caller did not identify the purpose of the call within the first 30 seconds of initiating the call.

In the 5 minute and 13 second call, the caller did not ask for a tour of the property.  However, the caller did solicit real estate agent services.  The following are a few quotes taken from the call, with the numbers at the start of each quote giving the time stamp of what time each statement was made (minute:second). The Asset/Pipeline agent spent the entire call marketing Asset real estate sales services:

> 1:15 C21 caller: "If I can show you a way to have your property sold (sic) investors for top dollar without pulling out the renters as it is, then definitely it would make sense to you, right?"
> 1:51 C21 caller: "May I know why you decide to sell your property by yourself rather than getting a real estate agent?"

PLAINTIFF'S ORIGINAL COMPLAINT FOR A CIVIL CASE - 4 / 12

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

3:20 C21 caller: "If I may ask, if you sold this home, um, if you sold this investment, do you have any plans for buying a new one?"

4:03 Plaintiff: "Honestly we're really, we're just trying to sell a house, we're, we're not really looking to, for any services or real estate agent."

4:18 C21 agent: "Alright, so um do you have any bad experience with an agent?"

A complete and accurate recording of this call is at *youtube.com/watch?v=I3hOg7tPS2w*

### Small Claims Lawsuit

Plaintiff sued Asset on February 17, 2021, in Clark County Washington Small Claims Court for calls #1 and #2 with case number 21S000079.  Plaintiff obtained a default judgement on March 22, 2021, and April 26, 2021, that judgement was transcribed to the Civil Docket with case number 21C2253-1.

On May 18, 2021, Asset then moved to vacate the judgement and a hearing was scheduled for June 22, 2021.  During that on-the-record court hearing, the Defendant conceded that the Plaintiffs phone number alleged to have received the calls was registered on the FTC *do-not-call-list* more than 30 days before January 14, 2021.

The judge vacated the small claims judgement and Plaintiff moved to dismiss the small claims lawsuit without prejudice in its entirety, and that motion was granted on June 22, 2021.

This small claims lawsuit would put many companies on notice that the Plaintiff didn't want unsolicited telemarketing calls, but Asset/Pipeline are difficult to deter.

### Unsolicited telephone call #3

On or about 4:25PM, June 10, 2021, Plaintiff received a phone call from (425) 209-1691. The call was placed to solicit real estate agent services from "Century 21 Northwest Realty". The caller did not identify the purpose of the call within the first 30 seconds of initiating the call.

In the 4 minute and 19 second call, the caller did not ask for a tour of the property.  The caller made clear the purpose of the call was to solicit real estate sales services.

PLAINTIFF'S ORIGINAL COMPLAINT FOR A CIVIL CASE - 5 / 12

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

1    A complete and accurate recording of this call is at

2    *youtube.com/watch?v=4Q5WMQjVrHY*

3                              **Commercial Telephone Solicitors**

4    RCW 19.158.050(1) mandates that:

5    "In order to maintain or defend a lawsuit or do any business in this state, a commercial
     telephone solicitor must be registered with the department of licensing."

6

7    Although RCW 19.158.050(3) says "The department of licensing shall issue a

8    registration number to the commercial telephone solicitor.", in practice this Commercial

9    Telephone Solicitor "registration number" appears as an endorsement on the business license

10   issued by The Washington State Department of Revenue.

11   Neither Asset nor Pipeline has this endorsement on their business license, and they act as

12   unlicensed commercial telephone solicitors.

13                              **Asset/Pipeline Are Annoying the Public**

14   In the underlying State Court judgement case 21C2253-1, Asset claimed their calls were

15   "business-to-business" and exempt from TCPA do-not-call violations.  It is true that the Plaintiff

16   owned an investment property, and as this is a free country, people are free to make an offer of

17   purchase.

18   Each time Asset/Pipeline called, Plaintiff would not have minded if was to deliver an

19   offer to purchase.  But in three calls and a total of 13 minutes and 11 seconds of phone time, all

20   they wanted to do was market their real estate agent services to him.

21   This was an annoying waste of time for Plaintiff and is an annoying waste of time for all

22   similarly situated real estate owners.

23   Plaintiff has testified in the underlying State Court judgement case 21C2253-1:

24

PLAINTIFF'S ORIGINAL COMPLAINT FOR A CIVIL CASE - 6 / 12          NATHEN BARTON
                                                                 4618 NW 11TH CIR
                                                                 CAMAS WA 98607

In his entire 44 years of living, at the time of these telemarketing calls, he had sold three homes and purchased six homes.

That is buying, or selling, about one house for every three years of adulthood.

Plaintiff is not a real estate professional.  Plaintiff does not work in real estate, and has never worked in real estate.

Plaintiff does not have, nor studied for, any real estate related job, license, or vocation.

Five of Plaintiff's home purchases were driven by marriages coming (or going), Plaintiff has never advertised the phone number in question as a business telephone line, and even in a case where a phone number was advertised to the public as a business telephone line, a court declined to strip that plaintiff of TCPA protection. *Savett v. Great Am. Power, LLC*, CASE NO. 1:20 CV 42, 2020 U.S. Dist. LEXIS 130570 (N.D. Oh. July 23, 2020)

## IV.   RELIEF

Plaintiff asked Asset/Pipeline to not be called and to be put on their do not call list. Plaintiff phone number at issue was at all relevant times registered on the FTC *do-not-call* list more than 30 days.  Plaintiff does not have any relationship with Asset or Pipeline by which they could legally solicit Plaintiff for any reason.

On information and belief, Asset and Pipeline were not registered as Commercial Telephone Solicitors with the Washington State Department of Licensing when any of the solicitation calls were placed to Plaintiff, in violation of RCW 19.158.050(1).

Defendant violated the TCPA 47 U.S.C. 227(c)(5) by soliciting Plaintiff 3 times without his consent on his cell phone with phone number (972) XXX XXXX while he was registered on the FTC *do-not-call* list.

Defendants violated Washington State RCW 19.158.150 3 times by soliciting Plaintiff on his cell phone while they were not registered on with the Washington State Department of

PLAINTIFF'S ORIGINAL COMPLAINT FOR A CIVIL CASE - 7 / 12

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

1   Licensing as Commercial Telephone Solicitors, or while working on behalf of an unregistered

2   Commercial Telephone Solicitor.

3        Washington State RCW 80.36.390(2) says

4        A person making a telephone solicitation must identify him or herself and the company or
     organization on whose behalf the solicitation is being made and the purpose of the call
5        within the first thirty seconds of the telephone call.

6   In each of the 3 solicitation calls the Defendants failed to identify the company behind the

7   solicitation and the purposes of the calls with the first 30 seconds of the phone calls.

8        Washington State RCW 80.36.390(3) says

9        If, at any time during the telephone contact, the called party states or indicates that
     he or she does not wish to be called again by the company or organization or
10       wants to have his or her name and telephone number removed from the telephone
     lists used by the company or organization making the telephone solicitation, then:
11

12       (a) The company or organization shall not make any additional telephone
     solicitation of the called party at that telephone number within a period of at least
13       one year;

14       Plaintiff believes that his January 14, 2021 *do-not-call* ("DNC") request is sufficient to

15  trigger protection under RCW 80.36.390(3) for the 2 solicitation calls placed to Plaintiff after

16  January 14, 2021.

17       Washington State RCW 19.158.110(1) says:

18       Within the first minute of the telephone call, a commercial telephone solicitor or
     salesperson shall:
19

20       (a)    Identify himself or herself, the company on whose behalf the solicitation is
     being made, the property, goods, or services being sold; and

21       (b)    Terminate the telephone call within ten seconds if the purchaser indicates
22       he or she does not wish to continue the conversation.

23       In the first solicitation call, Plaintiff indicated he was not interested in what they had to

24  offer if they were selling something or trying to become his real estate agent. The Asset/Pipeline

PLAINTIFF'S ORIGINAL COMPLAINT FOR A CIVIL CASE - 8 / 12      NATHEN BARTON
      4618 NW 11TH CIR
      CAMAS WA 98607

1  caller did not hang up within 10 seconds.  And Asset/Pipeline did not identify the services being

2  sold in the first 60 seconds of the call.

3      In the second solicitation call, Asset/Pipeline did not identify the services being sold in

4  the first 60 seconds of the call.

5      In the third solicitation call, Asset/Pipeline did not identify the services being sold in the

6  first 60 seconds of the call.

7      Washington State RCW 19.158.110(2) says:

8          If at any time during the telephone contact, the purchaser states or indicates that
           he or she does not wish to be called again by the commercial telephone solicitor
9          or wants to have his or her name and individual telephone number removed from
           the telephone lists used by the commercial telephone solicitor:
10

11         (a) The commercial telephone solicitor shall not make any additional commercial
           telephone solicitation of the called party at that telephone number within a period
12         of at least one year;

13     Plaintiff believes that his January 14, 2021 DNC request is sufficient to trigger protection

14  under RCW 19.158.110(2) for the 2 solicitation calls placed to Plaintiff after January 14, 2021.

15                              **Treble Damages**

16     Plaintiff believes the record shows that Asset and Pipeline violations of the law were

17  willful or knowing.  On April 13, 2021, Chad Storey testified that:

18         "The Complaint in this matter alleges that the phone calls at issue originated from phone

19         number 425-295-1197.  This is not a phone number connected either to me or to Asset

20         Realty.  I am wholly unfamiliar with this phone number."

21     Later in a Motion in the underlying state court case, supported by the declaration of Chad

22  Story dated June 17, 2021, Asset/Pipeline halfway own up to making the calls but claim 'Safe

23  Harbor' protections.

24

PLAINTIFF'S ORIGINAL COMPLAINT FOR A CIVIL CASE - 9 / 12            NATHEN BARTON
                                                                   4618 NW 11TH CIR
                                                                   CAMAS WA 98607

1    Even while claiming "Safe Harbor", they admit to only checking the FTC *do-not-call*

2  registry "at least once a quarter" when the law requires downloading and scrubbing against the

3  current FTC *do-not-call* in the previous 30 days to making an outbound solicitation call.

4    And even though Plaintiff's 972 area code phone number at question has been registered

5  on that *do-not-call* list since September 1, 2020, Chad Story testified that:

6    "Asset has a subscription to the National Do Not Call Registry, and our data team
     downloads from www.DoNotCall.gove the entire Do Not Call Registry at least once
7    every quarter.  We refresh the existing do-not-call database we maintain with the newly
     downloaded [FTC do-not-call] database."
8

9    "Additionally, we maintain our own internal list of customers who directly request not to
     be called."
10

11   "I have checked Mr. Barton's phone number of 972-XXX-XXXX [redacted by Plaintiff]
     against these databases, and it was not registered with the Do Not Call Registry as
     recently as early June of 2021."
12

13   Clearly, if Mr. Storey could not find Plaintiff's (972) number in his current *do-not-call*

14 database, he was using an FTC *do-not-call* database older than September 1, 2020, and his agent

15 on the January 14 phone call did not place Plaintiffs number on the Asset/Pipeline internal do-

16 not-call list like the agent said she did.

17   Second, Mr. Storey admits they only download (and presumably scrubbed) "at least once

18 a quarter" while the law requires at least within the last 30 days of placing an outbound

19 telemarketing phone call.

20   The truth is, Asset/Pipeline just call whomever they find listed on *Zillow.com* or

21 *Realtor.com* and they clearly do not care about scrubbing their outbound telemarketing calls

22 against the FTC *do-not-call* list.  Therefore, Plaintiff asks for treble damages under TCPA 47

23 U.S.C. 227(c)(5), and the presumption that violations of Washington State RCW 19.158 triple

24 damages under the Washington State Unfair Business Practices Act.

PLAINTIFF'S ORIGINAL COMPLAINT FOR A CIVIL CASE - 10 / 12

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

**All other Possible Damages**

Plaintiff prays for all possible damages, in law and in equity, statutory, real, and punitive, that he might be entitled too.  Such damages could be but are not limited to court costs and attorney fees.

**Injunctive Relief**

TCPA 47 U.S.C. 227(c)(5)(A) allows "an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,"

RCW 19.86.090 notes that anyone who is injured by a violation of RCW 19.86.020:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

may bring an action to enjoin further violations.

Washington State RCW 80.36.390(6) says:

> A person aggrieved by repeated violations of this section may bring a civil action in superior court to enjoin future violations, to recover damages, or both.

Plaintiff is not unique – he simply had the misfortune to list a property for sale and had his contact information scraped and then telephone solicited.  It is reasonable to believe that Asset and Pipeline have done this many times in the past and will continue harming the residents of this State in the future; as Chad Story has testified:

> "People who are trying to sell their real estate on public websites, like Zillow.com or Realtor.com, are making their contact information public.  As a real estate company, we contact these sellers"

this is the Asset and Pipeline business model.

Plaintiff asks this Court to enjoin the Defendants from further violations of State and Federal telemarketing laws.

PLAINTIFF'S ORIGINAL COMPLAINT FOR A CIVIL CASE - 11 / 12

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

## V.    CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:            6/22/2021

Signature of Plaintiff

Printed Name of Plaintiff       Nathen Barton

PLAINTIFF'S ORIGINAL COMPLAINT FOR A CIVIL CASE - 12 / 12

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

**DISTRICT COURT OF WASHINGTON**
**COUNTY OF CLARK**

NATHEN BARTON,

                Plaintiff,

     v.

CENTURY 21 NW REALTY, INC. and
ASSET REALTY, LLC,

                Defendants.

No. 21C2253-1

DECLARATION OF CHAD STOREY

I, Chad Storey, hereby declare as follows:

1.     I am over 18 years of age, competent to be a witness, and make this declaration based on my own personal, first-hand knowledge.

2.     I am the founder of Asset Realty, LLC ("Asset" or "Asset Realty").

3.     The Complaint in this matter alleges that the phone calls at issue originated from phone number 425-295-1197. This is not a phone number connected either to me or to Asset Realty. I am wholly unfamiliar with this phone number. However, Internet research shows that it is a wireless number belonging to an Andrew James Kearns of Issaquah, Washington. *See* **Exhibit A**, attached hereto, a true and correct copy of a web page with URL

DECLARATION OF CHAD STOREY -- 1 of 2

Western Washington Law Group, PLLC
P.O. Box 468
SNOHOMISH, WA 98291
425-728-7296 FAX 425.955.5300

showing phone number 425-297-1197 belonging to Andrew James Kearns. Neither Asset nor

I have no acquaintance, affiliation, or connection with Andrew James Kearns.

4.     Further Internet research into this phone number, 425-297-1197, shows it has

been the subject of at least one complaint to the FTC for making calls on behalf of Electric

Lightwave, LLC, dba Allstream. *See* **Exhibit B**, attached hereto. Allstream does not even

appear to be a real estate company.

5.     Asset Realty did not receive notice of this action or the March 22, 2021

hearing. If the Notice of Small Claim and Notice of Civil Hearing were indeed served on

United States Corporation Agents, Inc. in Bellevue, WA, by U.S. Mail, they were never

forwarded or delivered to me or to Asset Realty.

I declare under penalty of perjury under the laws of the State of Washington that the

foregoing declaration is true and correct to the best of my knowledge and belief.

Signed this 13 th day of April, 2021, at _____Kirkland_____, Washington.

Chad Storey

DECLARATION OF CHAD STOREY – 2 of 2

Western Washington Law Group, PLLC
P.O. Box 468
Snohomish, WA 98291
425-728-7296  Fax 425.955.5300

1
2
3
4
5
6
7
8
9

**DISTRICT COURT OF WASHINGTON**
**COUNTY OF CLARK**

10

NATHEN BARTON,

11
                                    Plaintiff,

No. 21C2253-1

12
            v.

DECLARATION OF CHAD STOREY IN
REPLY

13
CENTURY 21 NW REALTY, INC. and
ASSET REALTY, LLC,

14

15
                                    Defendants.

16

17          I, Chad Storey, hereby declare as follows:

18          1.      I am over 18 years of age, competent to be a witness, and make this declaration

19   based on my own personal, first-hand knowledge.

20          2.      I am the founder and current Governor of Defendant Asset Realty, LLC

21   ("Asset" or "Asset Realty").

22          3.      Asset, dba Century21 Northwest, is the owner of Pipeline Platform (aka

23   "Pipeline"), which is a software platform and provider of real estate lead management

24   software, real estate referrals, and other real estate related technology solutions.

25

26

27   DECLARATION OF CHAD STOREY IN REPLY – 1 of 3

4.      Our "Pipeline Platform Service License Agreement" is the agreement Asset

Realty LLC uses with Subscribers, who are Real Estate Brokerage Owners, Real Estate

Brokerage Managers, Real Estate Agents, or other professional that desires to utilize our

Pipeline products and services in a particular marketplace.

5.      Provision #4 of the Pipeline Platform Service License Agreement requires

subscribers to comply with all applicable laws, as follows:

**4. Dialer**
Subscriber shall become familiar with any and all legalities of any calls performed by
the Dialer, by understanding the laws and regulations found on the following websites:
1. www.ftc.gov – Federal Trade Commission
2. www.fcc.gov – Federal Communications Commission
3. www.donotcall.gov – National Do Not Call

Subscriber shall comply with all laws, ordinances, regulations, and requirements of
local, provincial, and federal governmental authorities governing dialing, autodialing,
and automatic, power, or predictive dialers. Subscriber shall immediately mark any
and all individuals requesting to not be called as Do Not Call status within the lead
manager on Subscriber's individual "Do Not Call" list. Subscriber shall provide legal
contact information in any outbound campaign within the initial greeting message.
Subscriber shall responsibly dial each campaign with courtesy to the recipients for
whom it is meant. Subscriber shall not send any calls to life-line services, such as
hospitals, fire, police, 911, or utility-related telephone numbers. Subscriber also shall
not send any sales outbound broadcasts to recipients that have not consented to
receiving such a broadcast. Subscriber shall use Do Not Call and opt-out features
made available to Subscriber within the lead manager. Subscriber shall consult with an
attorney before dialing any data for which the customer is unfamiliar, or if the
legalities of such dialing remain uncertain.

A true and correct copy of the Pipeline Platform Service License Agreement form, containing

the above language at Provision #4, is attached hereto as **Exhibit A**.

6.      Asset has a subscription to the National Do Not Call Registry, and our data

team downloads from www.DoNotCall.gov the entire Do Not Call Registry at least once

DECLARATION OF CHAD STOREY IN REPLY – 2 of 3

**Western Washington Law Group, PLLC**
P.O. Box 468
Snohomish, WA 98291
425-728-7296 Fax 425.955.5300

every quarter. We refresh the existing do-not-call database we maintain with the newly downloaded database.

7.      Additionally, we maintain our own internal list of customers who directly request not to be called.

8.      I have checked Mr. Barton's phone number of 972-207-5749 against these databases, and it was not registered with the Do Not Call Registry as recently as early June of 2021.

9.      People who are trying to sell their real estate on public websites, like Zillow.com or Realtor.com, are making their contact information public. As a real estate company, we contact these sellers to see whether we can schedule a tour of the property because we have interested buyers.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing declaration is true and correct to the best of my knowledge and belief.

Signed this 17th day of June, 2021, at _____*Kirkland*_____, Washington.

Chad Storey

DECLARATION OF CHAD STOREY IN REPLY – 3 of 3

Western Washington Law Group, PLLC
P.O. Box 468
Snohomish, WA 98291
425-728-7296 Fax 425.955.5300

**Exhibit A**

# Marketing Service License Agreement

This Terms of Services and Use Agreement ("Agreement") is entered into by and between Asset Realty LLC doing business as CENTURY21 Northwest a Washington Corporation, with offices located at 121 Lake Street and _____(hereafter "Subscriber") on this _____("date").

## RECITALS

CENTURY21 Northwest is the owner of PIPELINE PLATFORM ("PIPELINE") a software platform, provider of real estate lead management software, Real Estate Referrals, and other real estate related technology solutions.   Subscriber is a Real Estate Brokerage Owner, Real Estate Brokerage Manager, Real Estate Agent or other professional that desires to utilize PIPELINE products and services in the _____ marketplace.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and benefits expressed herein, the parties agree as follows:

### 1. Definitions
The following definitions as used in this Agreement shall have the following meanings:

1. "Software" shall mean any and all software products provided by PIPELINE for resale. This shall include, but not be limited to, the PIPELINE Platform ("CRM Platform").
2. "PIPELINE Referrals" shall mean any and all Referrals sold, referred or provided by PIPELINE to Subscriber, and may include, but is not limited to: Expired Referrals, Canceled Listing Referrals, FSBO Referrals, Pre-foreclosure Referrals, Absentee Owner, Probate Referrals, Divorce Referrals, Bankruptcy and others.
3. "Billing Cycle" shall be monthly (monthly fees) and upon the listing and/or closing for the referrals by the Subscribers Brokerage.
4. "Referral Fee" shall be the fee paid to Pipeline when a lead is passed to subscriber who later closes on the deal, or passed and/or referred to a broker assigned to the deal who closes the property lead at any point subsequent to the referral.  This fee shall be _____ of the office gross commission income.
5. "Bonus Fee" shall be the fee paid to PIPELINE when any lead is taken to 'Active' on the local listing service of subscriber or the Subscriber's agent who is assigned to the lead. This fee shall be $_____ (USD).
6. "Startup Fee" shall be the fee of engaging Pipeline, LLC to create the CRM Platform in the local listing services of the Subscriber. This fee shall be $_____ (USD). Paid by Century 21/Realogy.
7. "On-going Monthly Fee": shall be the monthly fee paid to Pipeline during the term of this Agreement for on-going maintenance of the system(s), customer service, Agent Training, and overhead in lead generation. This fee shall be $_____ (USD).
8. "Late Fee" shall be the fee assessed if any payment is not made within 5 days of its "due date". The fee shall be an additional _____ of the fee already due. The "due date" of each fee is as follows:

9. "Fee Schedules"
1. Start-up fee: within 10 days of the execution of this Agreement.
2. Referral Fee: within 10 days of the closing of the lead.
3. Bonus Fee: within 10 days of the lead going Active.
4. On-going Monthly Fee: Within 5 days of the 1st of each month of the term herein.

## 2. Limited Software License

PIPELINE hereby grants a limited, non-exclusive, non-transferable, revocable license (hereafter this "License") to use the Software subject to the terms and conditions set forth in this Agreement. This License permits the Subscriber to utilize this software only for its intended use. Subscriber shall not utilize this License for any purpose other than its intended use. Subscriber shall not reverse assemble, reverse compile, or otherwise translate or redistribute the Software. Subscriber shall not share, copy, or otherwise re-distribute the Software without the express written consent of PIPELINE. The license granted hereunder provides that a copy of the Software may only be used by the Subscriber. Concurrent or simultaneous use on two or more computers is prohibited. Subscriber further agrees not to disseminate or disclose their account username(s) or password(s), nor to allow anyone else to utilize their account for access to PIPELINE systems.

## 3. PIPELINE Referrals

1. License. PIPELINE hereby grants a limited, non-exclusive, non-transferable, revocable limited license to PIPELINE Referrals for which the Subscriber has purchased as part of his Subscriptions. This limited license permits the Subscriber to utilize PIPELINE Referrals for their individual purposes. Subscriber acknowledges that PIPELINE Referrals are PIPELINE's trade secret, proprietary information, and agrees not to share, copy, reproduce, or redistribute PIPELINE Referrals without the express written permission of PIPELINE.

2. Disclaimer. PIPELINE has made reasonable best efforts to ensure accurate information in all PIPELINE Referrals and data append services, and to provide it in a timely, accurate manner, including reliable acknowledgment of individuals listed on the National Do Not Call Registry. However, PIPELINE assumes no responsibility for the accuracy of PIPELINE Referrals or any errors, misrepresentations, or inaccurate information contained therein. PIPELINE provides this content "as is" and without warranties of any kind, either expressed or implied. Neither does PIPELINE warrant uninterrupted, error free functionality for its Software and services.

**4. Dialer**

Subscriber shall become familiar with any and all legalities of any calls performed by the Dialer, by understanding the laws and regulations found on the following websites:

1. www.ftc.gov – Federal Trade Commission
2. www.fcc.gov – Federal Communications Commission
3. www.donotcall.gov – National Do Not Call

Subscriber shall comply with all laws, ordinances, regulations, and requirements of local, provincial, and federal governmental authorities governing dialing, autodialing, and automatic, power, or predictive dialers. Subscriber shall immediately mark any and all individuals requesting to not be called as Do Not Call status within the lead manager on Subscriber's individual "Do Not Call" list. Subscriber shall provide legal contact information in any outbound campaign within the initial greeting message. Subscriber shall responsibly dial each campaign with courtesy to the recipients for whom it is meant. Subscriber shall not send any calls to life-line services, such as hospitals, fire, police, 911, or utility-related telephone numbers. Subscriber also shall not send any sales outbound broadcasts to recipients that have not consented to receiving such a broadcast. Subscriber shall use Do Not Call and opt-out features made available to Subscriber within the lead manager. Subscriber shall consult with an attorney before dialing any data for which the customer is unfamiliar, or if the legalities of such dialing remain uncertain.**5.**

**5.  Intellectual Property Rights**

Subscriber acknowledges that Software and PIPELINE Referrals and accompanying 'lead/client' information are PIPELINE trade secrets, and proprietary products and information protected under U.S. intellectual property laws. Subscriber further acknowledges that all rights, title and interest in and to the Software and PIPELINE Referrals, including any associated intellectual property rights, belong to and shall remain with PIPELINE. This Agreement does not convey an interest in or to the Subscriber, but only a limited license revocable in accordance with the terms of this Agreement. Subscriber acknowledges that damages caused by a breach of these intellectual property rights would be impossible to quantify and therefore Subscriber shall pay liquidated damages of $100,000 USD in the event of breach as well as any consequential damages reasonably caused from such breach to Pipeline.

**6. Terms of Subscriptions**

Subscriber authorizes PIPELINE to invoice Subscriber or enter into an ACH agreement to process the Subscriber's credit card on file for payment according to Subscriber's Billing Cycle. The initial term of this agreement shall be for one year from the date of the Subscriber's account 'going live' which shall entail that Pipeline is engaging sales personnel to acquire leads for subscriber. At the end of each term, the agreement shall automatically renew for an additional one year unless terminated 30 days prior to the end of the term.

The parties agree that the account for subscriber is going live on _____("Go Live Date").

In the event that PIPELINE enters into an ACH agreement and is not able to process payment from the Subscriber at the beginning of a renewal term, either because the credit card has expired or for any other reason, PIPELINE reserves the right to continue billing the Credit Card on file until a payment has been made. If a payment is not made within 90 days of the bill date the account will automatically terminate.   If the subscriber wishes to reactivate their account at that point, they will be responsible for the necessary reactivation fees.

## 7. Payment Information and Charges

1. Charges.

   The PIPELINE will charge subscriber for the following items as defined in Section 1 above:

   o  Startup Fee: recurring fee to receive services and limited use licenses for the Software and PIPELINE Referrals.
   o  Bonus Fee for leads that go Active on the applicable listing service.
   o  On-Going Maintenance Fee.
   o  Late Fee (if applicable).

## 8. Confidentiality and Non-Compete

Subscriber acknowledges that Subscriber may obtain confidential information during the course of doing business with PIPELINE and over the term of this Agreement. This information may include operations and affairs of PIPELINE, including particular methods and procedures used by it to conduct business. Subscriber acknowledges that all records, data, materials, and all other information and equipment provided by PIPELINE are the sole property of PIPELINE and remain so after termination of this Agreement. Subscriber agrees to surrender all such information or material to PIPELINE on demand or upon termination of this Agreement by either party.

Subscriber agrees that by subscribing to PIPELINE services they will receive confidential information about PIPELINE, and irrespective of cause of termination of said agreement,
Subscriber shall not, either directly or indirectly, personally or by any agent, use, disclose, copy, reproduce, disseminate, or otherwise produce in oral, written or electronic fashion, to any person, firm, or corporation, or by means of any corporate or other device, the name of an Expired Listing or For-Sale-by-Owner (FSBO) lead service. Nor will Subscriber use knowledge of the business for the benefit of themselves or other persons, or divulge information or data concerning PIPELINE, including, customer names, prices, terms or particulars of PIPELINE, whether by sale, gift, or any device, subterfuge or evasion. Subscriber will in good faith protect the goodwill of PIPELINE.

**9. Limitation of Liability**

PIPELINE shall not be liable for any claims relating to the Software and this Agreement, including any cause of action founding in contract, tort, or strict liability. In any event, the liability of PIPELINE shall not exceed the license fee paid to PIPELINE for use of the Software. In no event shall PIPELINE be liable for any loss of profits; any incidental, special, exemplary, or consequential damages; or any claims or demands brought against Subscriber, even if PIPELINE has been advised of the possibility of such claims or demands.

**10. Indemnification**

Subscriber shall indemnify, hold harmless and defend PIPELINE and its respective employees, officers and directors from and against any and all damages, losses, liabilities, actions, proceedings (whether legal or administrative), demands and expenses (including but not limited to reasonable attorney's fees) threatened, asserted or filed by a third party against the PIPELINE, relating to Subscriber's account and/or relations with the PIPELINE. By subscribing to PIPELINE, Subscriber agrees not to disclose any assigned codes, including passwords and usernames to others. Subscriber also shall not distribute the information contained in the product, service to any person or organization, by any means, printed electronic or other.

**11. Force Majeure**

Subscriber acknowledges that in certain circumstances matters outside of PIPELINE's, reasonable control may happen that will cause a disruption of service; including, without limitation, labor disturbances, Force Majeure, failure of a communications carrier to provide lines or service, governmental regulations or interference, accidents, fires, explosions, terrorism or from any other similar or dissimilar cause. PIPELINE will not be held responsible for interruptions to its Software or services caused by matters outside of PIPELINE's reasonable control.

**12. Survivorship**

All warranties, representations, indemnities, covenants and other agreements of the parties hereto shall survive the execution, delivery and termination of this Agreement. This Agreement shall insure to and bind the successors and assigns of the respective parties hereto.

**13. Governing Law**

This Agreement shall be deemed to have been executed in the State of Washington and shall be interpreted and construed according to the laws of the State of Washington, without giving effect to any

conflict of law's provisions. The parties hereby consent to the jurisdiction of the federal and state courts located in the State of Washington.

**14. Termination**

PIPELINE reserves the right to terminate service for any Subscriber at any time at its sole discretion under the following terms:

   *a.* *Subscriber is not engaging the services of PIPELINE such that Subscriber is not closing at least 10% of the 'leads' provided.   This will be based on quantifiable data and will take into a 3 month cycle from when the leads are sent to subscriber and closing data. However, PIPELINE will not terminate until at least six (6) months after the account "goes live" as defined in Section 6 above;*
   *b.* *Payment is not made on the account in a timely fashion;*
   *c.* *In the event Subscriber or any of its owners files bankruptcy;*
   *d.* *Subscriber does not put Agents who have access to the Pipeline Platform through the Pipeline Platform training program.*

Subscriber understands that all sales are final and that once a payment has been processed, they are committed for the entire Billing Cycle. Subscriber understands that they are paying for access to the program for the time committed. Not using the account does not justify a refund as having access to the program incurs certain fixed costs on PIPELINE. Subscriber understands that if that they are unable to use the program, they may place their account on hold.

Subscriber acknowledges that PIPELINE does not guarantee 100% accuracy of results but has made reasonable best efforts to ensure accurate information. Refer to Section 3, Article 2. Therefore, Subscriber has no expectation of refunds due to inaccuracy of data. In the event that PIPELINE is unable to resolve technical issues, Subscriber may terminate service at any time with no expectation of a refund of fees.

**15. Assignability**

The parties agree that this Agreement may be assigned by PIPELINE; however this Agreement is not assignable by Subscriber without the express written consent of PIPELINE.

**16. Notice.**

All notices shall be sent to:

|  |  |
|---|---|
| Asset Realty LLC | Subscriber |
| DBA CENTURY21 Northwest | _____ |
| Attn: Chad Storey 123 Lake Street | _____ |
| Kirkland, WA 98033 | _____ |

The parties below agree to the agreement between PIPELINE and Subscriber referenced above.

Date: _____

**On behalf of CENTURY21 Northwest,  Asset Realty LLC owner of the Pipeline Platform Software**

_____
Chad Storey, Asset Realty, LLC
DBA CENTURY21 Northwest

**On behalf of 'Subscriber'**

_____
Signature

_____
Printed Name

_____
Company "Subscriber"

_____
Title