Honorable Robert J Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

NATHEN BARTON,

                   Plaintiff

   v.

ASSET REALTY LLC &
PIPELINEPLATFORM.COM LLC

                Defendants.

Case No.: 3:21-cv-05462-RJB

RESPONSE TO DEFENDANTS'S
JOINT MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM

COMES NOW Plaintiff Nathen Barton (hereinafter referred to as "Plaintiff") to respond to DEFENDANTS'S JOINT MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM (Dkt 18, "MTD") filed in this court on September 16, 2021.

## 1. INTRODUCTION

Plaintiff received three unsolicited telemarketing calls pitching the real estate sales services of defendant Asset Realty LLC ("Asset"). Plaintiff moved to sue Asset in Small Claims Court, properly obtained a default judgement, and pursued collection of the judgement. Asset apparently objected to the size of the judgement and moved to vacate it.

In moving to vacate, Asset volunteered that PipeLinePlatform.com LLC ("PipeLine") initiated the calls to pitch Asset's services.

In oral arguments over Asset's Motion to Vacate, Asset argued to the TCPA claims were not proper to be heard in Small Claims Court.  Thus, to accommodate Asset, Plaintiff dismissed that case and brought this action in this Court.

**Plaintiff's facts and causes of action DO state a claim for a violation of the TCPA**

The Defendants' arguments and supporting claims to evade responsibility under the TCPA are simple:

Defendant argument #1 – Plaintiff owned an investment property.  Therefore, Plaintiff is a business, ergo, the TCPA does not apply in the instant case.

Plaintiff is a homeowner – like about 64% of Americans[1].  When a tangible asset like a home is no longer wanted or needed, it may be listed for sale.  It might be listed for sale on *zillow.com*, *craigslist.org*, or *offerup.com*.  This is true of unwanted or no longer useful homes, automobiles, bicycles, household goods, or any other tangible asset.

In fact, according to *offerup.com*[2], "half of Americans plan to resell their gently used goods to support their income" and "Last year, the average person on OfferUp made more than $978 in a month selling items during Spring Cleaning!"

Half of Americans didn't suddenly become "businesses" exempt from the TCPA protections just because they occasionally post items for sale in public forums.

Plaintiff has alleged that he is not in the real estate business, and only rebuttal Defendants can muster on this point is "Plaintiff does not allege that this number was not used for any business purpose", but this does not aid their cause.  In the ninth circuit, consent is an affirmative defense.  It is not Plaintiff's burden to establish that Defendant's had a legal reason to solicit

---

[1] See *https://www.statista.com/statistics/184902/homeownership-rate-in-the-us-since-2003/*

[2] See *https://about.offerup.com/wp-content/uploads/2019/03/OfferUpSpringCleaningRecommerceReport2019.pdf* page 6, second paragraph.

Plaintiff, *McKesson v. True Health* established it as an affirmative defense[3] to which the Defendant bears the burden of proof.

Just because a consumer offers something for sale on an internet sales platform does not mean that consumer is now a "business" where the TCPA no longer applies.

### "Plaintiff pleads that" Allegations

Defendants' write (Dkt 18, page 6, line 10) "Plaintiff pleads that he placed the 972 number in real estate listings of properties for sale by owner" and this is false.  In the Amended Complaint, Plaintiff quoted the sworn testimony of Chad Storey ("Storey"), owner of Asset and PipeLine:

> "People who are trying to sell their real estate on public websites, like Zillow.com or Realtor.com, are making their contact information public. As a real estate company, we contact these sellers to see whether we can schedule a tour of the property because we have interested buyers"

And in "Am. Compl. at 3:5-10", Plaintiff explained the significance of Storey's testimony to the Court.  Plaintiff did not plead "that he [Plaintiff] placed the 972 number in real estate listings of properties for sale by owner", or that Defendants obtained Plaintiff's phone number from real estate listings because:

a)  Plaintiff did not place his 972 number in real estate listings

b)  Plaintiff did not see his 972 number posted in real estate listings or he would have asked that it be removed

c)  Plaintiff does not know how or where Defendants obtained his 972 number and will have to learn that during discovery.

### Stoops v. Wells Fargo Bank

---

[3] See http://cdn.ca9.uscourts.gov/datastore/opinions/2018/07/17/16-17123.pdf page 16, section 1.

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

1    In *Stoops v. Wells Fargo Bank*, it was not in dispute that "Plaintiff [one person] has

2    purchased at least thirty-five cell phones and cell phone numbers with prepaid minutes for the

3    purpose of filing lawsuits [incurring legal claims] under the Telephone Consumer Protection

4    Act"

5    In the instant case, Plaintiff is married to a lady with cell service of her own, and has

6    three minor children, each with cell phones.  In addition, Plaintiff has a 718-area code number

7    primarily for to be used on public records that need a phone number listed.

8    The defense's strategy here hopes to be that the Court's imagination run wild, with

9    visions of Plaintiff owning shoeboxes full of phones dancing in the mind's eye.  The truth is

10   much more mundane, Plaintiff is in a five person household.  Phones are ubiquitous.

11   In a five-person household, Plaintiff has only pursued litigation for telemarketing

12   violations related to three different phone numbers.

13   And it would be hypocritical for defense counsel to suggest that Plaintiff should not have

14   one phone number for use on documents destined to become a public record – and not shield

15   Plaintiff's private phone number.

16   Plaintiff knows because defense counsel Robert J. Cadranell put phone number (425)

17   728-7296 on the public document "Notice of Appearance", Dkt 10 of this case.  And on August

18   31, 2021, Plaintiff called (425) 728 7296, and to no great surprise, that number isn't Mr.

19   Cadranell's private number, and while Plaintiff was the epidemy of polite, the lady who

20   answered the phone refused to give Plaintiff Mr. Cadranell's private number, with the

21   explanation "there is no just way I am going to give out personal phone numbers".

22

23

24

CASE NO 3:21-CV-05462-RJB

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

1        So Mr Cadranell uses a public facing telephone number, and shields his personal phone

2 numbers on public documents, and won't even let his telephone screener give out his personal

3 numbers to polite telephone callers, but would he criticize others for doing the same?

4        I have spoken personally to Mr. Cadranell, and he certainly has to much class to criticize

5 others for doing what he himself does.

6        In exactly the same way as Mr. Cadranell does not use (425) 728 7296 "to generate

7 lawsuits", Plaintiff does not use (718) 710-5784 "to generate lawsuits".

8                **CTSA Chapter 19.158 RCW - Real Estate Brokers**

9        It may (or may not) be true that RCW 19.158 does not apply to Asset, as Asset would

10 appear on their face to be a real estate broker.

11        PipeLine is not a real estate broker – they are in the telemarketing business, as they admit

12 to on their own website[4]:

13     "About Our Company

14     Founded in 2005, Pipeline Platform has worked for 17+ years on these big big questions,
   How can we use automation to target the right customers?   How can we build processes

15     with millions of warm leads in the Real Estate and Mortgage industry and get results?
   How can we predict who will be transacting next?  How can we sort millions and

16     millions of homeowners in one market & target our next sale?

17     Our company, Pipeline Platform solves these questions.   We hire only the best in the

18     business & we are committed to providing each and every client with exceptional service.
   Auto-Nurturing & prediction is our game -- using multi-stage, multi-level, multi-channel

19     marketing campaigns providing you, your team or your company -- with Live Transfer
   Referrals, Coaching and Training -- to maximize your KPIs & closing ratios."

20

21     and

22

23

24
_____

[4] See *https://www.pipelineplatform.com/first*

RESPONSE TO MOTION TO DISMISS         5 / 12         NATHEN BARTON
CASE NO 3:21-CV-05462-RJB                   4618 NW 11TH CIR
                                                   CAMAS WA 98607

"You're busy.  We will call leads and generate referrals with Live Transfers.  We maintain high quality telemarketers who will generate appointments just for you with our CS option."

Plaintiff believes that the relationship between PipeLine and Asset works as such. Pipeline initiates the calls to "leads" such as Plaintiff.  If the PipeLine agent had been able to convert Plaintiff into a "referral", Plaintiff would have been transferred to an actual Asset real estate agent, or perhaps to a more general sales agent in Asset's direct employ.

RCW 19.158 does not have an exemption for telemarketers calling on behalf of entities exempt from RCW 19.158, or an exemption for telemarketing companies owned by entities exempt from RCW 19.158.

Contrary to "because Plaintiff has alleged Defendants are real estate brokers" (MTD page 9, lines 5-6), Plaintiff never alleges PipeLine to be a "real estate broker".  To the extent that Plaintiff "alleges" what PipeLine is or does, Plaintiff quotes PipeLine owner Storey's sworn testimony (Am. Complaint, page 2, lines 21-23):

Pipeline Platform (aka "Pipeline"), which is a software platform and provider of real estate lead management software, real estate referrals, and other real estate related technology solutions.

### CTSA Chapter 19.158 RCW - Damages

Defendants' write:

"Plaintiff's Amended Complaint does not allege any actual damages, therefore the Court can grant no relief for a violation under Chapter 19.158 RCW"

First, Plaintiff did allege to have suffered real damage – wasted time and annoyance.

Second, with all due respect to Blacks Law Dictionary, The Supreme Court held in *Birdsall v. Coolidge*, 93 U.S. 64 (1876) that the phrases "compensatory damages" and "actual damages" are identical.

Plaintiff has alleged that Defendant's wasted over 13 minutes of Plaintiffs time on unwanted sales pitch (Dkt. 13, Page 6, line 20), an annoying waste of Plaintiffs time that should be compensated.

Further, CTSA RCW 19.158.130 says:

A civil penalty **shall** be imposed by the court for **each violation of this chapter** in an amount **not less than** five hundred dollars nor more than two thousand dollars per violation. (emphasis added).

Concluding that consumers can only recover under the CTSA if they suffered significant actual damages would render this remedial consumer protection statute useless against telemarketers who violate calling time restrictions, prompt identification restrictions, harassment restrictions, but where such violations generally do not result in money fraudulently sucked out of consumer's wallets.

For example, it would be a nonsensical reading of RCW 19.158.040(2) [prohibiting phone calls during traditional 'quiet' hours] for it only be actionable if the telemarketer is later able cause a consumer to incur "real damages".

**Defendants Fail the 60 second Rule**

Defendants claim that within 60 seconds of each call, they satisfied their legal duty to

"identify himself or herself, the company on whose behalf the solicitation is being made, the property, goods, or services being sold."

And they provide transcripts of each call in an attempt to prove this.

**Call #1**

For call #1, they provide:

0:59 Caller: "So actually sir, I just would like to ask what's stopping you to sell this property with an agent?"

1           However, they omit that at the 60 second mark of the call, the caller is midway through

2  the word "actually", and it is not until 67 seconds that the caller is voicing the word "agent".

3           Nowhere in the first 60 second of the call does Asset identify the services they initiated

4  the call for the purposes of selling.  At best, in the first 60 seconds they have identified that the

5  calling entity is a reality, and they are asking about the sales history of a particular property.

6           The Defendants' then would suppose that Plaintiff had enough to 'connect the dots' and

7  guess that the intent of the call was real estate sales services.

8           The law requires telemarketers to 'identify', not 'give enough clues such that the purpose

9  of the call can be guessed'.

10          Defendants' make this same silly argument for calls #2 and #3 as well.

11          All that is evident in the first 60 seconds of the call is the caller is from Asset, and they

12  are asking questions related a particular piece of real estate.  The caller could have just as easily

13  been trying to warm Plaintiff up for a low-ball offer from their client (look at your failures!

14  Maybe this offer is a good one!) but it is not until after the 60 second mark that the caller's true

15  intentions are revealed.

16                             **Call #2**

17          For call #2, their position is even worse.  They only bother to transcribe the first 24

18  seconds of the call, and nowhere in those 24 seconds do they market their own services to

19  Plaintiff.  Same as call #1, they could have been calling to warm Plaintiff up to a low-ball sales

20  offer.  It is not until *after* the 60 second mark that the caller's true intentions are revealed.

21                             **Call #3**

22          The defendants are even more wrong on this call.  By their own admission, the Asset

23  caller was looking to end the call at 36 seconds, and had the caller done so, she would not have

24

RESPONSE TO MOTION TO DISMISS        8 / 12        NATHEN BARTON
CASE NO 3:21-CV-05462-RJB                          4618 NW 11TH CIR
                                                   CAMAS WA 98607

satisfied "identify himself or herself, the company on whose behalf the solicitation is being made, the property, goods, or services being sold."

In the first 36 seconds of the call, the caller does not reveal that her true intention when she initiated the call was to market real estate sales services to Plaintiff, but she still has 24 seconds to do so under RCW 19.158.

To the extent that Plaintiff may have said something that extended the call, *Plaintiff extended the caller 24 more seconds to comply with the law!*

Something that the caller got closer to actually doing, she is voicing the word 'database' in the following sentence at the 60 second point of the call.

0:56 Caller: "Yes, the reason I'm calling is that we actually have a database of people [unclear] buyers actively looking to [unclear] in your area…"

Defendants are quite confused on this point themselves, writing

> He [Plaintiff] now alleges that the caller did not identify the company's services within the first minute, when the call would not have even lasted that long without Plaintiff's questions.

They are confused because they seem to be under the impression they only have a legal duty under RCW 19.158.110(1)(a) if the call is extended past 36 seconds, but at first moment of the call that there was "conversation" (RCW 19.158.020(2)(a)), they had the 60 second obligation under RCW 19.158.110(1)(a), and to the extent that Plaintiff may have said something that extended the call, their duty under RCW 19.158.110(1)(a) was unchanged.

### Call #1 - Plaintiff's Desire to End the Call

Defendants' allege there was "no clear statement during the first call that he [Plaintiff] wanted to end it" (Dkt. 18, page 11, starting at line 7):

It seems Defendants didn't see Page 3, Lines 23-24 in the Amended Complaint, where 26 seconds into the first call, Plaintiff said:

0:26 Plaintiff: "If you are calling to sell us something or be our agent, then we are not interested"

At the moment Plaintiff spoke those words, the caller knew:

a)  "Sheila" was only calling to "sell us something or be our agent"
b)  Plaintiff wasn't interested

PipeLine is paying its employees to convert leads into referrals[5] and when Plaintiff made clear he wasn't interested in what Sheila was paid to promote, what other lawful option did Sheila have but hang up?  Plaintiff believes all jurors will find that Plaintiff's statement extended Sheila a clear invitation to hang up.

### Call #1 - Plaintiff's Desire to placed on Do Not Call List

Defendants' allege that "During the first call, Plaintiff made no clear request to be put on a do not call list." (Dkt 18, page 11, starting at line 17).

Later down the page, by defendants' own admission, they admit that during the First Call (Dkt 18, page 11, starting at line 25):

"The caller [Sheila] offered to have her manager call Plaintiff back, to which he responded at 3:02, "We would actually prefer to not be called, and for you to maybe put us on a, maybe do not call list?""

The best person to judge if Plaintiff's *do-not-call* request was clear enough is "the caller", Sheila.  Conveniently omitted from Defendants' motion is Sheila's next words spoken after Plaintiff asked to be placed on the do-not-call list (Amended Complaint, Page 4. Line 4):

 3:12 C21 caller: "Oh, I see sir, alright then, so, um, let me do that for you sir".

Sheila wasn't confused about Plaintiff's request and this Court should not be either.

### RCW 80.36.390(2) and (3)

---

[5] See *https://www.pipelineplatform.com/first*

1    For all the same arguments above, Plaintiff is not a business, did not place his 972

2    number in real estate listings of properties for sale by owner, and did not consent or invite

3    Defendants' to telephone solicit him.

4    For all the same arguments above, Defendants did not comply with their duties under

5    RCW 80.36.390(2).

6    If Defendants' violated the 60 second duty of 19.158.110(1)(a), they by definition

7    violated their duty under RCW 80.36.390(2).

8    For all the same arguments above, Defendants did not comply with their duties under

9    RCW 80.36.390(3).

10    Similarly, if Defendants' violated the *do-not-call* duty of 19.158.110(2), they by

11    definition violated their duty under RCW 80.36.390(3).

## 2.   CONCLUSION

13    Defendants' MTD should be denied.

15    DATED: September 16, 2021        ____/s/ Nathen Barton_____
                                      Nathen Barton
16                                    4618 NW 11th Cir
                                      Camas WA 98607
17                                    FarmersBranch2014@gmail.com

## I.        CERTIFICATE OF SERVICE

19    I hereby certify that on September 16, 2021, I electronically filed the foregoing with the

20    Clerk of the Court using the Court's CM/ECF System, which will automatically generate a

21    Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF

22    System, which includes the Defendant.  The said Notice of Electronic Filing specifically

23    identifies recipients of electronic notice.

Executed on September 16, 2021.

/s/ Nathen Barton

Nathen Barton

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607